## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **MARLIN E. JONES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | 4:06CV3051 |
| **vs.** ) | |
| ) | MEMORANDUM |
| **TERRY L. BURNS,** ) | AND ORDER |
| ) | |
| **Defendant.** ) | |

This matter is before the magistrate judge by consent of the parties on defendant's "MOTION FOR SUMMARY JUDGMENT" [67] and plaintiff's "OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR COUNTER SUMMARY JUDGMENT" [72]. For the reasons discussed in this Memorandum and Order, the court finds that the case should be dismissed without prejudice for lack of federal subject matter jurisdiction and the summary judgment motions should be denied as moot.

### I.  NATURE OF THE CASE

Plaintiff, who resides in Nebraska, is a former tenant of Platteview Apartments, a low income apartment complex in North Platte, Nebraska, in which the U.S. Department of Housing and Urban Development ("HUD") subsidizes rentals. The property is managed by Midstates Development, Inc. ("MDI"), which is located in Sioux City, Iowa. Defendant, Terry M. Burns, resides in the State of Iowa and is Vice-President of MDI.

In his complaint, filed March 7, 2006, the plaintiff asserted one claim of libel under Nebraska law against Mr. Burns. The libel allegedly occurred in a letter (Doc. 70-5) dated December 9, 2005, from Burns as Vice-President of MDI to Andrew Dandridge, Project Manager, U.S. Department of

Housing & Urban Development ("HUD") in Omaha, Nebraska.

Plaintiff had written to U.S. Senator Chuck Hagel seeking assistance regarding HUD's refusal to investigate the plaintiff's eviction from Platteview Apartments. Senator Hagel then sought information from HUD Regional Director Macie Houston, and the inquiries were passed along through the Omaha office of HUD to defendant Burns.

In his response to Omaha HUD Project Manager Dandridge, Mr. Burns advised that plaintiff moved into Platteview Apartments in November 2002 and was repeatedly cited for failing to properly maintain a sanitary unit. The situation "came to a head" in June 2004, "when subcontractors, who had been hired to replace the vanities and medicine cabinets in all units as a part of the project's renovation, refused to work in his unit due to the odor and unsanitary condition of the bathroom." Plaintiff's lease was terminated, and plaintiff vacated the unit on August 31, 2004, pursuant to a court-approved negotiated settlement which his attorney requested in order to avoid an eviction. Burns' letter to Dandridge described plaintiff as "a vengeful ex-tenant who has sued so many people that he now knows enough to act as his own attorney and thus at little or no expense on his part can continue to bring charges in an attempt to extort money." These comments were allegedly conveyed from Dandridge to Houston and eventually in some form to Senator Hagel's staff.

Meanwhile, in a separate legal action,[1] the plaintiff had already sued the persons responsible for evicting him from Platteview Apartments. Thus, the only damage the plaintiff claims to have

---

[1] Apparently, that action was filed in the District Court for Lincoln County, Nebraska. *See* Doc. 70-4, Plaintiff's Deposition, p. 124:6-13. A related case, *Jones v. Platteview Apartments*, Case No. 4:04-cv-03247, filed in this district, was dismissed for lack of federal subject matter jurisdiction on August 17, 2004. The records of the court show that the plaintiff has filed at least nine lawsuits (including the present lawsuit) in this court since May 4, 1992.

suffered in connection with the defendant's alleged libel involve a perceived impairment of his "rapport" with Senator Hagel and of his relationship with HUD (Doc. 1 at p.4). Plaintiff seeks an award of $1 million in "actual, compensatory and punitive damages" for the impaired relationship and rapport, as well as mental anguish.

The defendant denies all liability and contends summary judgment should be granted in favor of the defendant because the allegedly libelous statements were made pursuant to a quasi-judicial proceeding, are privileged, and the defendant is entitled to absolute immunity.

## II. FINDINGS OF FACT[2]

1. Plaintiff resides in the State of Nebraska. Defendant resides in the State of Iowa.

2. Defendant is a vice-president of Midstates Development, which owns and manages apartment complexes participating in programs administered by the U.S. Department of Housing and Urban Development ("HUD").

3. Defendant is the head day-to-day manager of such complexes. One of his duties as vice-president is to cooperate in any HUD investigations regarding Midstates Development properties.

4. Plaintiff is a former tenant of a Midstates Development property located in North Platte, Nebraska.

5. On or about November 1, 2005, plaintiff wrote a letter (Doc. 74 at p.7) to U.S. Senator Chuck Hagel, lodging a "formal complaint" against HUD. Plaintiff advised Sen. Hagel that the apartment manager at Platteview Apartments repeatedly violated HUD's rules and regulations, and

---

[2]I note that the plaintiff objects that the defendant's supporting affidavit is not valid because it was signed on August 16, 2007, but states it was notarized on August 16, 2006. While the court commends the plaintiff's attention to detail, the court is also satisfied that the 2006 date is a typographical error and declines to strike the defendant's affidavit (Doc. 70-2).

HUD refused to take any remedial action and ignored his complaints. Plaintiff requested that Sen. Hagel conduct an investigation.

6. By letter dated December 7, 2005, Sen. Hagel advised plaintiff that his letter had been forwarded to Macie Houston, Regional Director of HUD in Kansas City, and he would forward Houston's response to the plaintiff.

7. Andrew Dandridge, a project manager for HUD, initiated an investigation into plaintiff's complaint. A HUD formal investigation was launched.

8. As part of the HUD investigation, Dandridge requested a letter from defendant Burns outlining MDI's position regarding the Marlin Jones complaint.

9. Defendant Burns complied with the HUD request and sent Andrew Dandridge a letter on or about December 9, 2005, explaining the nature of the dispute:

> Jones moved into Platteview Apartments in November 2002. Shortly thereafter, during the regularly scheduled monthly pest control/unit checks conducted in his apartment, a sanitation issue developed. His apartment smelled of urine and the bathroom smelled particularly bad. There was urine on the floor, tub, and walls adjacent to the toilet. He was repeatedly cited for failure to properly maintain a sanitary unit. He attempted to claim the toilet was malfunctioning but our maintenance men and certified plumbers were unable to find a plumbing problem. It all came to a head in June of 2004, when subcontractors, who had been hired to replace the vanities and medicine cabinets in all units as a part of the project's renovation, refused to work in his unit due to the odor and unsanitary condition of the bathroom. His lease was terminated and he vacated the unit August 31, 2004, per a court-approved negotiated settlement which his attorney had requested in order to avoid an eviction.
>
> This process of attempting to enforce the lease provisions soured the relationship between Mr. Jones and Platteview's management. While still a resident, he circulated a petition which alleged mismanagement on the part of the site manager ... and which called for her to be fired. [H]e collected nineteen signatures from among the sixty-six residents. I attended a tenant meeting early in 2004 at which time I defended our management and declared I would not fire [the site manager] in response to the

petition. At no time did I attempt to prevent the formation of a tenant organization nor did I deny the use of our facilities for tenant functions....

After Mr. Jones left Platteview he filed a lawsuit seeking $250,000.00 from Platteview Apartment, [the site manager], the plumbers, and myself, alleging wrongful eviction, invasion of privacy, and other things related to what has been described....

Mr. Jones has become our worst nightmare; a vengeful ex-tenant who has sued so many people that he now knows enough to act as his own attorney and thus at little or no expense on his part can continue to bring charges in an attempt to extort money. ...

10. On or about December 27, 2005, HUD Regional Director Macie Houston reported the results of the investigation to Senator Hagel. Her letter repeats the information in Burns' letter of December 9, 2005 regarding the unsanitary condition of plaintiff's apartment and plaintiff's moving out of the apartment on August 31, 2004. According to Houston, Jones had also complained to HUD in 2003 that the Platteview Apartments were being mismanaged and the site manager had prevented him from organizing other tenants. HUD was unable to divert the staff and resources to send a representative to meet privately with the plaintiff in 2003 regarding these issues. "Additionally, HUD did not have any evidence of mismanagement or harassment by MDI, therefore no official action was taken." Houston's letter concludes,

> Mr. Jones continued to send numerous emails to Mr. Dandridge, but since the issues he was raising appeared to be within the Nebraska Landlord-Tenant Act, HUD involvement was not considered necessary. Mr. Dandridge's Supervisor, Mr. Steven L. Gage, advised him to refer Mr. Jones' complaints to the management company and not to become personally involved, but to continue to monitor the situation.
>
> Legal proceedings are still active between Mr. Jones and MDI. It has been HUD's position that this was a dispute between a tenant and landlord and no direct HUD involvement was warranted.

11. Apparently, plaintiff continued to correspond with Senator Hagel about his eviction from the Platteview Apartments. The court file contains the following correspondence

- A letter dated February 1, 2006 to Senator Hagel from a private investigator hired by plaintiff to photograph the condition of plaintiff's toilet between March 17, 2003 and August 19, 2004. (Doc. 32 at p.12).

- A letter dated March 4, 2006 to the HUD office in Omaha (cc: Senator Chuck Hagel) complaining, *inter alia*, that Macie Houston "evaded looking into any evidence outside management's false statements," and warning the HUD officer that he may be called as a witness in this matter. (Doc. 32 at p.16).

- A letter dated April 20, 2006 from Senator Hagel to the plaintiff, thanking him for writing again regarding his problems with HUD. The letter stated that the senator had received Ms. Houston's report. If plaintiff wanted to pursue the matter further, it was suggested that he file a complaint with the Office of Inspector General at HUD. (Doc. 32 at p. 20.

### III. JURISDICTION

Plaintiff alleges that this court has diversity jurisdiction over his complaint pursuant to 28 U.S.C. § 1332, which provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States."

The court may raise the issue of subject matter jurisdiction on its own motion at any time while the lawsuit is pending. *See James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d

828 (8th Cir. 2005). While the record shows that the plaintiff and defendant are citizens of different states, the record does not suggest that the matter in controversy exceeds the sum or value of $75,000.

> When the court considers whether a claim meets the amount in controversy requirement, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (footnotes omitted). Nonetheless, if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount," dismissal is justified. *Id.* In short, "the Supreme Court's yardstick demands that courts be very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction." *Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993).

*Hunter v. District of Columbia*, 384 F. Supp. 2d 257, 260 (D.D.C. 2005).

As noted above, and previously discussed in Order No. 44, the plaintiff has already sued the persons responsible for evicting him from Platteview Apartments before filing this action, and he cannot raise those claims again in this action. The only cognizable damage plaintiff claims to have suffered as the result of the allegedly libelous statement is a perceived impairment of his rapport with Senator Hagel and of his relationship with HUD, for which he seeks an award of $1 million.

This claim for defamation arises under the law of the State of Nebraska. Under Nebraska law, in an action for defamation, the damages which may be recovered are (1) general damages for harm to reputation; (2) special damages; (3) damages for mental suffering; and (4) if none of these are proven, nominal damages. *See, e.g., McCune v. Neitzel*, 235 Neb. 754, 765, 457 N.W.2d 803, 811 (1990). Punitive or exemplary damages are prohibited by the Constitution of the State of Nebraska and cannot be awarded in this case. Nebraska Const. Art. VII, § 5; *Braesch v. Union Ins.*

*Co.*, 237 Neb. 44, 58, 464 N.W.2d 769, 777 (1991); *Distinctive Printing & Packaging Co. v. Cox*, 232 Neb. 846, 857, 443 N.W.2d 566, 574 (1989).

Although plaintiff has argued at great length in his written submissions about the harm he allegedly suffered by losing his lease at the Platteview Apartments, those damages were the subjects of other lawsuits. The issues raised in this lawsuit are very narrow. Much of the information submitted by the plaintiff throughout this proceeding about the harm he has endured is simply not relevant to any estimation of the monetary value of his rapport with Senator Chuck Hagel or his relationship with HUD.

> In considering whether to dismiss a complaint for lack of subject matter jurisdiction, the court must accept all of the factual allegations in the complaint as true, but may consider materials outside the pleadings. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005). "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. National Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992). While the complaint is to be construed liberally, the Court need not accept factual inferences drawn by plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See Primax Recoveries, Inc. v. Lee*, 260 F. Supp. 2d 43, 47 (D.D.C. 2003).

*Hunter v. District of Columbia*, 384 F. Supp. 2d 257, 259-60 (D.D.C. 2005).

Federal courts are courts of limited jurisdiction, and may only hear cases pursuant to a grant of power contained in either the Constitution or in an act of Congress. *Hunter*, 384 F. Supp. 2d at 259. "Subject matter jurisdiction 'goes to the foundation of the court's power to resolve a case, and the court is obliged to address it sua sponte.'" *Id*. The court has considered the undisputed facts evidenced in the record. Raising the issue of jurisdiction *sua sponte*, the court concludes that it

appears to a legal certainty that plaintiff's claim is really for less than the jurisdictional amount of $75,000.  *See James Neff Kramper Family Farm P'ship v. IBP*, 393 F.3d at 830.

Accordingly, the court finds that this case must be dismissed pursuant to Fed. R. Civ. P. 12(h)(3), which provides:  "Whenever it appears by suggestion of the parties *or otherwise* that the court lacks jurisdiction over the subject matter, the court shall dismiss the action."  (Emphasis added).

**IT IS ORDERED:**

1. This case is dismissed without prejudice pursuant to Fed. R. Civ. P. 12(h)(3) for lack of subject matter jurisdiction.

2. All further proceedings in this matter, including he final pretrial conference previously set for October 23, 2007, and the trial previously set for November 27-28, 2007, are hereby cancelled.

**DATED October 11, 2007.**

        **BY THE COURT:**

        s/ **F.A. Gossett**
        **United States Magistrate Judge**